PETERSON, Judge.
A.O., a certified nursing assistant (CNA), appeals a final order of the Department of Health and Rehabilitative Services (HRS) confirming a report finding him to be a perpetrator of neglect of an aged person. The HRS order allowed his name to be placed on the state’s abuse registry pursuant to section 415.103, Florida Statutes (1993). We reverse.
A.O., an employee of a temporary health care agency, was assigned to care for L.H., a patient at a nursing home. The nursing home’s supervising registered nurse instructed A.O. to bathe each of his patients while she distributed medication to other patients on the floor. After successfully completing the first patient’s shower, A.O. assisted L.H. into a shower chair and placed a soft restraint around her waist. Discovering that towels and washcloths which were on the towel cart when he showered the first patient were missing, he attempted to locate replacements. Failing to locate the replacements, he asked his supervising nurse if she could locate some for him. She looked in the direction where L.H. was sitting in the shower chair, and told A.O. that she did not know where the towels were kept and that he should find them himself. He then returned to L.H. and rolled her shower chair into her room assuming that his supervisor, having seen L.H. in the hall, would look after her while he searched for towels. The assumption was incorrect; unknown to A.O., the supervisor did not monitor L.H. but continued on her rounds passing out medication to other patients.
Abandoning his effort to locate towels, A.O. was returning to L.H.’s room when he heard a housekeeper call out that a patient was on the floor. Running to L.H.’s room and arriving about the same time as the supervising nurse, he found L.H. on the floor next to the shower chair. Medical personnel *1360 were called, L.H. was transported to a hospital emergency room, and a subsequent examination revealed that she had fractured her right wrist.
A complaint against A.O. was filed and a proposed confirmed report of neglect on A.O. was entered under the Florida Protective Services System. A.O. then applied for and was denied a request for expungement of the record. Finally he requested a formal administrative hearing and that request was granted.
The hearing officer who presided over the formal administrative hearing recommended to HRS that a final order be entered upholding the finding of neglect made under the Florida Protective Services System. The hearing officer noted in the final order the definition of neglect under section 415.102(12), Florida Statutes (1993) and concluded that A.O. was guilty of neglect under such statute by finding:
When [A.O.] discovered that all the towels were gone from the towel cart and began his search for them, he became careless for the safety of his patient, L.H. Although he sought assistance from the staff nurse, and her refusal to assist was unprofessional, the patient was still in [his] care.... His assumption that [the supervising nurse] must have seen L.H. sitting in a chair in the hall and would look after her while he searched the hall for towels, was carelessness as contemplated by the statute. Since L.H. was an aged and disabled adult, she was easily susceptible to injury. A reasonably prudent caregiver would recognize that such a person, while sitting in a shower chair unattended, was exposed to potentially-serious injury. Although L.H.’s wrist injury may not be considered serious, the potential for injury from falling, even from a short distance from the chair to the floor, could reasonably be expected to result in serious physical harm. Thus [A.O.’s] single incident of carelessness must be classified as neglect under the statute.
The hearing officer recommended that a “final order be entered upholding the classification of [the] abuse report ... as confirmed for neglect and denying the request by [A.O.] to amend or expunge his name from the report as a confirmed perpetrator of neglect of an aged person.” HRS adopted in full the recommended order. A.O. then appealed the HRS final order.
In KM.T. v. Dept. of Health & Rehabilitative Services, 608 So.2d 865 (Fla. 1st DCA 1992), a CNA employed by a care center understood it to be a standard operating procedure that patients should not be left alone in the facility’s restorative dining room for any amount of time. K.M.T., a CNA, was in this dining room with two patients. Her co-employee took another patient back to that patient’s room but then delayed returning to the dining room for several minutes because she was asked to assist with some other patients. When the co-employee returned, she observed that the two patients in the dining hall were unattended and that one of them was lying on the floor trying to get up. After being attended to by medical personnel, it was determined that the patient did not suffer any substantial physical harm. K.M.T. apparently had left these patients alone in order to put some power steering fluid in her car. She reasoned that she would only be absent a few minutes and the patients were fine when she left them alone a few minutes earlier to return their trays.
Under an earlier version of section 415.102 than is presently applicable, the first district found that HRS had failed to prove by a preponderance of the evidence that K.M.T. had committed the alleged neglect. The court noted:
... HRS had to prove that continuous supervision of aged persons or disabled adults present in restorative dining rooms is essential to their well-being. The only evidence presented by HRS on this issue was Centerville’s “tacitly understood” policy that at least one staff member had to be present in the restorative dining room at all times when even one patient was present in the dining room. HRS presented no agency rule stating that aged persons and disabled adults may not be left unattended for a few minutes in a nursing home’s restorative dining room, there was no expert testimony that Centerville’s “tacitly understood” policy was a generally accept *1361 ed standard within the nursing home industry.
The court then went on to conclude that
the purely subjective standard the hearing officer created and applied in this case does not constitute a sufficient standard for determining whether an individual’s acts or omissions constitute neglect within the meaning of the Act ... the acts or omissions must be judged against an objective standard, which may be defined by rule or by proof of general acceptance within the nursing home industry.... Because HRS failed to prove that KM.T.’s single act of briefly leaving L.V. unattended in the restorative dining room constituted neglect as defined by section 415.102(13), the confirmation of neglect must be reversed. (Emphasis omitted).
KM.T. at 872-73.
The 1993 version, as well as the current version of section 415.102(12), re-codified as subsection 415.102(20), includes a definition of neglect which did not exist in the statute interpreted in KM.T. The 1993 and current statutes both include the following additional language:
“Neglect” is repeated conduct or a single incident of carelessness which produces or could reasonably be expected to result in serious physical or mental harm or a substantial risk of death.
Under the revised statute, neglect is no longer simply what it has traditionally meant— failing to provide that which is essential to caring for another’s well being — but now also includes any act of “carelessness” which could reasonably be expected to result in serious physical injury. The revised statute, however, while clearly designed to encompass more acts within its scope, does not alter the requirements of objectivity set forth in KM.T.
In the instant case, as A.O. correctly asserts, HRS failed to show that leaving the patient unattended was either contrary to generally accepted nursing care standards, or a violation of an HRS promulgated rule.
We reverse the final agency order with directions to expunge A.O.’s name from the abuse registry.
ORDER REVERSED; REMANDED.
GOSHORN, J., concurs.
DAUKSCH, J., dissents, with opinion.